IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| LORENZOE WILSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:15-cv-000182 |
| ) | Judge Sharp / Knowles |
| JOHN FUSON, ) | |
| ) | |
| Defendant. ) | |

# REPORT AND RECOMMENDATION

This matter is before the Court upon Defendant's Motion for Summary Judgment. Docket No. 22. Along with that Motion, Defendant has contemporaneously filed a supporting Memorandum of Law with an attachment (Docket Nos. 23, 23-1), a Statement of Undisputed Material Facts (Docket No. 24), the Affidavit of Douglas Tackett (Docket No. 26), and the Affidavit of John Fuson (Docket No. 27). Defendant argues that "Plaintiff has altogether failed to prosecute this action and his Eighth Amendment claims should be dismissed because they do not rise to the level of a constitutional violation." Docket No. 22.

Plaintiff has not responded to the instant Motion, and Defendant has filed a "Notice of Plaintiff's Failure to Respond to Summary Judgment." Docket No. 28.

Plaintiff, who, at all times relevant to the case at bar, was housed at the Montgomery County Jail, filed this pro se, in forma pauperis, action pursuant to 42 U.S.C. § 1983, alleging that Defendant violated his Eighth Amendment rights because:

> Inmate's [*sic*] must sit on the ground because there are no tables.
> Pretrial Detainee's [*sic*] are housed with sentenced inmate's [*sic*]

> and are segregated upon arrival at the Jail to a pod with less
> privileges. There are several cell's [*sic*] without fireheads
> (sprinklers) in them which is a safety hazard. An inmate here just
> killed hisself because there is no safety gate on the top teer [*sic*]
> which is a safety hazard. In F-Pod (medical) the bunkbeds are on
> the floor so your [*sic*] basically sleeping on the ground. You have
> to eat your meals on the toilet sink or in your bed. There is green
> mold growing out of the drinking fascet's [*sic*]. Black mold can be
> found on the walls along with other feece's [*sic*]. There is no
> emergency call buttons to alert the officer's [*sic*] of any medical
> emergency. There's spider's [*sic*] in almost every window here
> from where they dont [*sic*] spray. The guards watch you in the
> shower from the tower which is right above the shower. They also
> feed very low portions of food to where it's just enough not to
> starve!

Docket No. 1.

Plaintiff sues Defendant solely in his individual capacity, seeking injunctive relief, a temporary restraining order, and $500,000 in compensatory damages, as well as nominal damages and punitive damages. *Id.*

Defendant filed the instant Motion for Summary Judgment and supporting materials on November 23, 2015, arguing that this case should be dismissed because Plaintiff has failed to prosecute this action, has failed to comply with this Court's March 6, 2015 Order (Docket No. 3) requiring him to keep the Court informed of his address since his release from Jail during the pendency of this lawsuit, has failed to appear for his noticed Deposition, and has failed to respond in any way to the instant Motion. Docket Nos. 23, 28. Defendant further argues that, even taking the allegations of Plaintiff's Complaint as true, they fail to allege conditions of confinement that rise to the level of a constitutional violation under the Eighth Amendment. *Id.*

For the reasons discussed below, the undersigned finds that there is no genuine dispute as to any material fact and that Defendant is entitled to a judgment as a matter of law. Accordingly,

the undersigned recommends that the instant Motion for Summary Judgment (Docket No. 22) be GRANTED.

## II. Undisputed Facts[1]

**A. Affidavit of John Fuson**

Defendant is the duly elected Sheriff of Montgomery County, Tennessee. Docket No. 27, Affidavit of John Fuson ("Fuson Aff."), ¶ 1. One of the duties of his office is the operation of the Montgomery County Jail. *Id.*

Assistant Chief Deputy Douglas Tackett is the designated administrator of the Montgomery County Jail. Inmate grievances are handled by Assistant Chief Tackett and the employees designated for administration of the Jail. *Id.*, ¶ 2. Defendant has always acted in good faith in discharging his duties in overseeing the operations of the Jail. *Id.* He is not aware of any of the alleged unconstitutional conditions existing at the Jail. *Id.*

Defendant has never had any personal interaction with Plaintiff or received a grievance from Plaintiff. *Id.*, ¶ 3. He was never notified of any problems with Plaintiff related to his incarceration in the Jail. *Id.*

**B. Affidavit of Douglas Tackett**

Douglas Tackett is the Assistant Chief Deputy of the Detention Division for the Montgomery County Sheriff's Office. Docket No. 26, Affidavit of Douglas Tackett ("Tackett Aff."), ¶ 1. As Chief Deputy of the Detention Division, he oversees the operation of the Montgomery County Jail. *Id.*

---

[1] Unless otherwise noted, the following facts are in a form required by Fed. R. Civ. P. 56 and are undisputed.

The Montgomery County Jail is a 736 bed pre-trial detention facility located in Clarksville, Tennessee. *Id.*, ¶ 2. Construction on the facility began in approximately 2002 and was completed in 2004. *Id.*, ¶ 3. The Jail was constructed in accordance with the standards set by the American Corrections Association ("ACA") and was constructed by an Architect certified within the American Institute of Architects ("AIA"). *Id.* The Jail meets the minimum standards for the physical plant of Jail Facilities as set forth by the Tennessee Corrections Institute ("TCI"). *Id.* The Jail has continuously maintained its certification by TCI that it has complied with the Tennessee minimum standards for local correctional facilities. *Id.*

Jail staff is expected to be observant at all times to note any part of the Jail facility or equipment that might be in need of maintenance. *Id.*, ¶ 4. If a maintenance need is noted, the Jail staff notifies the Shift Supervisor. *Id.* Along with his staff, Mr. Tackett arranges for all preventative and proper maintenance to the facility and equipment of the Jail by requesting work orders from the Montgomery County maintenance department. *Id.*

Sanitation and hygienic living conditions in the Jail are maintained in an appropriate manner so as to provide as healthful an environment as possible. *Id.*, ¶ 5. The facility is maintained in accordance with the standards of the TCI and/or the Tennessee Department of Public Health, and meets or exceeds those standards. *Id.* The Jail is cleaned on a daily basis. *Id.*, ¶ 6. The Shift Supervisor inspects the Jail on each shift for cleanliness and if any portion of the Jail does not meet the cleanliness standards established by the Jail Administrator, that portion of the Jail will be cleaned again until it meets those standards. *Id.* Inmates are given daily access to cleaning supplies and are responsible for cleaning their own cells. *Id.*

The Jail is inspected on an annual basis by the TCI. *Id.*, ¶ 7. The Jail has been

recommended for recertification and found to be in compliance with the Tennessee Minimum Standards for local correctional facilities for the past five years in a row. *Id.* Cleanliness and sanitation have never been an issue during an inspection of the Jail. *Id.*, ¶ 8. The Jail has often been commended for being an extremely clean and well-run facility. *Id.* The Jail has not been cited for a deficiency with regard to sanitation or cleanliness in the past five years. *Id.*

Inmates at the Jail are housed in Pods. *Id.*, ¶ 9. All inmates at the Jail are initially held in the classification/intake Pod until they can be classified. *Id.* Inmates at the Jail are classified into the various Pods based on a number of criteria, including: gender, trial status, length of sentence, compatibilities with other inmates, medical needs, and disciplinary history. *Id.* Inmates are not classified based upon race or religion, and the general population Pods enjoy significantly similar privileges and conditions. *Id.*

Plaintiff's Jail file indicates that he was housed in the Jail from August 2014 until May 2015. *Id.*, ¶ 10. He was placed in administrative segregation, or relocated to another Pod, several times during his incarceration for disciplinary infractions. *Id.*

The Jail adheres to all fire codes and sprinkler heads are located in every inmate cell. *Id.*, ¶ 11. It is common for inmates to "flood" their cells by tampering with the sprinkler heads located in each cell. *Id.*, ¶ 12. When this occurs, the sprinkler head is capped until such time that it can be repaired and the offending inmate moved to another cell. *Id.*

Plaintiff's Jail file indicates that the was disciplined on two separate occasions for damaging the sprinkler head in his cell, causing it to "flood." *Id.*, ¶ 13. For each of these infractions, Plaintiff received a disciplinary write-up and a loss of privileges. *Id.*

Inmate beds in F-Pod (the designated medical Pod) are situated low to the ground for

necessary medical and safety reasons. *Id.*, ¶ 14. Many of the inmates housed in this Pod are injured or on suicide watch. *Id.* For medical reasons deemed appropriate by Correct Care Solutions, the Jail's medical care provider, these beds sit lower off the ground than those in the general population Pods. *Id.*

Plaintiff's Jail filed indicates that he was housed in F-Pod on several different occasions during his incarceration; once for hoarding medication and again for making threats of self-harm to deputies on duty. *Id.*, ¶ 15.

Plaintiff's Jail file indicates that he reported finding a spider in his cell (R-19L) on September 4, 2014. *Id.*, ¶ 16. On that same day, he was relocated to a new cell (R-21L) and a maintenance request form was completed by the deputies on duty. *Id.* The Jail is sprayed for pests monthly. *Id.*

The Jail does not have emergency call buttons in the Pods. *Id.*, ¶ 17. Jail staff is, however, available to inmates at all times in the event of an emergency. *Id.* Deputies perform security checks once every hour on first and second shift, and once every 30 minutes on third shift. *Id.* Official roll calls are performed three times a day, at every shift change. *Id.* Additionally, a deputy is stationed in the control tower 24 hours a day, 7 days a week, and is responsible for keeping watch over each inmate Pod visible from their tower. *Id.* Inmates are able to report an emergency to a Jail deputy at any time. *Id.*

Correct Care Solutions, a third party entity contracted with by the County to provide medical care to inmates, maintains a presence at the Jail 24 hours a day, 7 days a week, 365 days a year. *Id.*, ¶ 18. An inmate may request a sick call slip from a deputy at any time, and medical emergencies may be reported at any time. *Id.*

Each inmate Pod is two stories and has a bank of cells upstairs and a bank of cells downstairs. *Id.*, ¶ 19. The center of each Pod is a large open area. *Id.* The male showers at the Jail are situated in the far corner of the Pod. *Id.* The showers are walled on three sides with an open entrance. *Id.* The showers are communal and there are four shower heads in each. *Id.* Three of the shower heads are along the Pod's outer wall and one shower head is on the adjacent wall near the shower entrance. *Id.* Inmates in non-restricted housing areas are permitted to shower at any time during their recreation period. *Id.*, ¶ 22. They may shower as often or as long as they wish. *Id.*

One deputy is assigned to the control tower per shift. *Id.*, ¶ 20. The control towers have four pods to oversee. *Id.* Tower deputies are required to maintain an accurate and legible log for the tower which lists all events occurring on the shift in all four Pods. *Id.* The tower deputy is not allowed to sleep, watch television, or engage in any activity that would cause them to be inattentive to their required duties. *Id.*

The showers are situated below the control tower by a distance of at least 10 feet. *Id.*, ¶ 21. In order to observe an inmate showering for any significant period of time, a deputy would have to peer over the edge of the window to specifically view the nude body of a male inmate. *Id.* Jail deputies do not enter the showers while inmates are showering, unless necessary for security related reasons. *Id.*

The supervision of inmates is an essential function and responsibility of the Jail. *Id.*, ¶ 23. The safety and security of inmates and Jail staff is primary among the many reasons why inmates must be supervised in the Jail. *Id.* Jail showers are known areas with increased security risks in Jails. *Id.* Inmates may go to the shower to handle or transfer contraband or may start

fights in showers. *Id.* As such, it is important for Jail staff to have some supervisory access to shower areas. *Id.* Female deputies at the Jail may serve in the control tower or as rovers. *Id.* The duties associated with these positions may include the incidental viewing of nude male inmates. *Id.* However, such viewing would be infrequent and casual observations only and would be at a distance. *Id.* No inmate at the Jail is subjected to regular surveillance by deputies of the opposite sex while naked and it is not the policy or the procedure of the Jail to require male inmates to shower under close or extended surveillance of female deputies. *Id.*

Mr. Tackett is not aware of any deputy, male or female, inappropriately viewing inmates while showering. *Id.*, ¶ 24. It would not be possible for a control tower deputy to observe an inmate showering for any extended period of time and still perform the duties required of a control tower deputy. *Id.* If it were brought to Mr. Tackett's attention and shown that a deputy was inappropriately viewing inmates while showering at the Jail, that deputy would be subject to disciplinary action up to and including termination of his or her employment. *Id.*

Inmates at the Jail are provided three meals a day in accordance with the guidelines as set forth by the ACA. *Id.*, ¶ 25. All meals average a total of 2700 calories or more per day. *Id.* All meals utilized at the Jail are prepared, reviewed, and implemented by a registered dietician. *Id.*

Plaintiff's Jail file indicates that he filed several grievances threatening to refuse his meals. *Id.*, ¶ 26. These grievances were responded to in a timely manner, and Plaintiff was informed that he would be placed on a medical watch for refusal to eat his provided meals. *Id.*

At all times relevant to Plaintiff's incarceration, the Jail had in place a grievance procedure by which inmates could express complaints with the conditions of their confinement. *Id.*, ¶ 27. An inmate may request an Inmate Grievance Form from any deputy. After filling out

the grievance, the inmate may give it to any deputy. *Id.* The Shift Supervisor on duty reviews the grievances and handles the grievance by responding or taking action himself or assigning the grievance to the responsible supervisor for action or response. *Id.* The Supervisor indicates the response or action taken on the form, signs the form, and places the original in the inmate's Jail file and has a copy returned to the inmate. *Id.* Plaintiff availed himself of this practice and submitted numerous grievances while incarcerated at the Jail. *Id.* All of his grievances were addressed and responded to by Jail staff in a timely manner. *Id.*

### III. Analysis

#### A. Local Rules 7.01(b) and 56.01(c) and (g)

Local Rule 7.01(b) states, in pertinent part:

> Each party opposing a motion shall serve and file a response, memorandum, affidavits, and other responsive material not later than fourteen (14) days after service of the motion, except, that in cases of a motion for summary judgment, that time shall be twenty-one (21) days after the service of the motion, unless otherwise ordered by the Court. Failure to file a timely response shall indicate that there is no opposition to the motion.

Defendant filed the pending Motion on November 23, 2015. Docket No. 22. Plaintiff has failed to respond to the instant Motion.

Additionally, with respect to Motions for Summary Judgment specifically, Local Rules 56.01(c) and (g) state, in pertinent part:

> c. Any party opposing the motion for summary judgment must respond to each fact set forth by the movant ...
>
> . . .
>
> g. Failure to respond to a moving party's statement of material facts, or a non-moving party's statement of additional facts, within the time periods provided by these Rules shall indicate that the

9

> asserted facts are not disputed for the purposes of summary judgment.

Plaintiff has also failed to respond to Defendant's Statement of Undisputed Material Facts. Pursuant to Local Rule 56.01(g), Plaintiff's failure to respond indicates "that the asserted facts are not disputed for the purposes of summary judgment." Accordingly, there are no genuine issues as to any material fact and all that remains to be determined is whether Defendant is entitled to a judgment as a matter of law.

## B. Summary Judgment Standards

It would be inappropriate to grant Defendant's Motion solely on the ground that Plaintiff has failed to respond. *See Stough v. Mayville Community Schools*, 138 F.3d 612, 614 (6th Cir. 1998). As the Sixth Circuit has stated:

> [A] district court cannot grant summary judgment in favor of the movant simply because the adverse party has not responded. The Court is required, at a minimum, to examine the movant's Motion for Summary Judgment to ensure that he has discharged [his initial] burden ... The federal rules require that the party filing a Motion for Summary Judgment "always bears the burden of demonstrating the absence of a genuine issue as to a material fact."

*Id.* (citations omitted). The Court will, therefore, consider whether Defendant has met his burden under the appropriate summary judgment standards discussed below.

Under Fed. R. Civ. P. 56(c), summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A dispute is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).

In order to prevail on a Motion for summary judgment, the moving party must meet the burden of proving the absence of a genuine issue as to material fact concerning an essential element of the opposing party's claim. *Celotex v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). In determining whether the moving party has met its burden, the Court must view the evidence in the light most favorable to the nonmoving party. *Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986).

Fed. R. Civ. P. 56 provides that the nonmoving party may not rest upon the mere allegations or denials of his or her pleading, but his or her response, by affidavits or otherwise, must set forth specific facts showing that there is a genuine issue for trial. If a nonmoving party, however, fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, there is no genuine issue as to any material fact because a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex*, 477 U.S. at 322-23, 106 S. Ct. at 2552, 91 L. Ed. 2d at 273. When this occurs, the moving party is entitled to summary judgment as a matter of law. *Id.* at 322-23, 106 S. Ct. at 2552; *Williams v. Ford Motor Co.,* 187 F.3d 533, 537-38 (6th Cir. 1999).

## C.  42 U.S.C. § 1983

### 1.  Generally

Plaintiff alleges violations of his Eighth Amendment rights pursuant to 42 U.S.C. § 1983. *See* Docket No. 1. Section 1983 provides, in part, that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...

Thus, in order to state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48, 108 S. Ct. 2250, 2254-55 (1988), *citing Parratt v. Taylor,* 451 U.S. 527, 535, 101 S. Ct. 1908, 1913, 68 L. Ed. 2d 420 (1981) (overruled in part on other grounds, *Daniels v. Williams,* 474 U.S. 327, 330-331, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986)); *Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 155, 98 S. Ct. 1729, 1733, 56 L. Ed. 2d 185 (1978). The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Id.* at 49, 108 S. Ct. 2255, *quoting United States v. Classic,* 313 U.S. 299, 326, 61 S. Ct. 1031, 1043, 85 L. Ed. 1368 (1941).

### 2. Eighth Amendment

The Eighth Amendment provides that:

> Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.

U.S. Const. amend. VIII.

The United States Supreme Court has held that the constitutional prohibition of "cruel and unusual punishments" forbids punishments that are incompatible with "the evolving

standards of decency that mark the progress of a maturing society," or which "involve the unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 102-03, 97 S. Ct. 285, 290, 50 L. Ed. 2d 251 (1976) (citations omitted).

In order to establish an Eighth Amendment claim, an inmate must satisfy a two-prong test: (1) the deprivation alleged must be objectively serious; and (2) the official responsible for the deprivation must have exhibited deliberate indifference to the inmate's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970, 1977, 128 L. Ed. 2d 811 (1994).

**D. The Case at Bar**

Defendant is the Sheriff of the Montgomery County. Fuson Aff., ¶ 1. As noted, Plaintiff sues Defendant solely in his individual capacity. *See* Docket No. 1. As an initial matter, 42 U.S.C. § 1983 does not provide for the imposition of liability based upon a theory of *respondeat superior*. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691-94 (1978). In order to establish individual liability under § 1983, therefore, Plaintiff must demonstrate that Defendant either directly participated in the activity that allegedly violated his Constitutional rights, or personally authorized, approved, or acquiesced in such activity. *See, e.g., Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984); *Dunn v. State of Tennessee*, 697 F.2d 121, 128 (6th Cir. 1983); *Hays v. Jefferson County*, 668 F.2d 869 (6th Cir. 1980). Plaintiff must allege "a causal connection between the misconduct complained of and the official sued" (*Dunn*, 697 F.2d at 128), and must present affirmative evidence that Defendants violated his rights; conclusory allegations are not enough (*see Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989)). *See also, Anderson,* 477 U.S. at 257; *Nix v. O'Malley,* 160 F.3d 343, 347 (6th Cir. 1998); *Lujan v. National Wildlife Fed'n,* 497 U.S. 871, 888, 110 S. Ct. 3177, 3188, 111 L. Ed. 2d

13

695 (1990); *McDonald v. Union Camp Corp.,* 898 F.2d 1155, 1162 (6th Cir. 1990).

As can be seen in the factual allegations recounted above, other than mentioning Defendant Fuson when naming the Defendants, Plaintiff has not levied any allegations whatsoever against Defendant Fuson specifically. Additionally, it is undisputed that Defendant was not aware of any of the alleged unconstitutional conditions at the Jail, has never had any personal interactions with Plaintiff, has never received a grievance from Plaintiff, and was never notified of any problems with Plaintiff related to his incarceration at the jail. Fuson Aff., ¶¶ 2, 3. Accordingly, Plaintiff cannot establish that Defendant Fuson either directly participated in the activity that allegedly violated his Constitutional rights, or personally authorized, approved, or acquiesced in such activity. Defendant Fuson is, therefore, entitled to a judgment as a matter of law.

Moreover, as set forth above, Mr. Tackett's Affidavit establishes that Plaintiff's conditions of confinement did not violate his Eighth Amendment rights. *See* Tackett Aff., *passim*. Absent the violation of a constitutional right, Plaintiff cannot sustain his claim.

### IV. Conclusion

For the foregoing reasons, the undersigned concludes that, viewing all the facts and inferences in favor of the nonmoving party, there is no dispute as to any material fact and Defendant is entitled to a judgment as a matter of law. The undersigned therefore recommends that Defendant's Motion for Summary Judgment (Docket No. 22) be GRANTED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have

fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

_____
E. CLIFTON KNOWLES
United States Magistrate Judge